UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X
SEGUNDO CHARICANDO, LUIS
MARIO CHAVEZ HUANGA, LUIS
BERMEO, and ADOLFO
DAQUILEMAN, individually and on
behalf of all others similarly situated,

                            Plaintiffs,

            -against-

TRIBESMEN GENERAL
CONTRACTING, INC., TRIBESMEN
GROUP INC., and ENDA LALLY, as an
individual,

                            Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-5920 (DLI) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiffs Segundo Charicando, Luis Mario Chavez Huanga, Luis Bermeo, and

Adolfo Daquileman ("Plaintiffs") initiated this action against Defendants Tribesmen

General Contracting, Inc., Tribesmen Group Inc., and Enda Lally ("Defendants") on

October 4, 2022. (*See* Compl., ECF No. 1.) Plaintiffs allege various claims, including

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New

York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL"). (*Id.*)

The parties have reached a proposed settlement of Plaintiffs' wage and hour

claims, the terms of which are set forth in a revised settlement agreement filed with the

Court. (*See* Dec. 4, 2024 Proposed Settlement Agreement ("Second Settl. Agr."), ECF No.

48-1; *see also* Nov. 19, 2024 Proposed Settlement Agreement ("First Settl. Agr."), ECF No.

46-1.) On November 19, 2024, the parties filed a joint letter motion requesting that the

Court approve the settlement agreement as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). (*See* Motion for Settlement Approval ("Mot. for Settl. Approval"), ECF No. 46.) The next day, the Honorable Dora Lizette Irizarry referred the parties' motion to the undersigned Magistrate Judge for a report and recommendation. (Nov. 20, 2024 ECF Order Referring Motion.)

For the reasons set forth below, the Court finds the settlement agreement to be fair and reasonable and recommends that the parties' proposed settlement be approved.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Allegations in the Complaint

As set forth in the complaint, Plaintiffs allege that they were employed by Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc. (Compl., ECF No. 1, ¶¶ 7–10.) These entities purportedly "functioned as a single integrated enterprise," (*id.* ¶ 24), and were owned and operated by Defendant Enda Lally. (*Id.* ¶¶ 13–24.)

In the complaint, Plaintiff Segundo Charicando alleged that he worked as a carpenter from in or around December 2018 until in or around September 2022 and worked approximately sixty-six (66) hours each week. (*Id.* ¶¶ 26, 29.) Plaintiff Charicando avers that he regularly worked six (6) days per week with shifts "beginning at approximately 7:00 a.m. each workday and regularly ending at approximately 3:30 p.m., or later, three (3) days per week and from 7:00 a.m. each workday and regularly ending at approximately 8:30 p.m., or later, three (3) days per week." (*Id.* ¶¶ 27–28.) Plaintiff Charicando claims he was paid a flat hourly rate, "without regard for the numbers of hours worked," of approximately $23.00 per hour from in or around December 2018 until in or around December 2020, $25.00 per hour from in or around

January 2021 until in or around December 2021, and $28.00 per hour from in or around January 2022 until in or around September 2022.[1] (*Id.* ¶ 30.) Plaintiff Charicando alleges that he was not compensated the appropriate overtime rate (1.5x his regular rate of pay) for the overtime hours he worked. (*Id.* ¶ 31.) In addition, Plaintiff Charicando contends that Defendants paid him on a bi-weekly basis from 2018 to 2019, and once every three weeks from 2020 to 2022, in violation of timely pay and frequency of pay requirements under the NYLL. (*Id.* ¶ 32.) Finally, Plaintiff Charicando alleges that he was not compensated at all for his last 13 weeks of employment. (*Id.* ¶ 33.)

The complaint further alleges that Plaintiff Luis Mario Chavez Huanga worked as a carpenter from in or around March 2018 until in or around September 2022, and that he worked approximately forty-six and a half (46.5) hours each week. (*Id.* ¶¶ 34, 37.) Plaintiff Chavez Huanga avers that he regularly worked five (5) days per week with shifts "beginning at approximately[] 7:00 a.m. each workday and regularly ending at approximately 3:30 p.m., or later, three (3) days per week and from 7:00 a.m. each workday and regularly ending at approximately 5:30 p.m., or later, two (2) days per week." (*Id.* ¶¶ 35–36.) Plaintiff Chavez Huanga claims he was paid a flat hourly rate, "without regard for the numbers of hours worked," of approximately $23.00 per hour from in or around March 2018 until in or around December 2020, and $27.00 per hour from in or around January 2021 until in or around September 2022. (*Id.* ¶ 38.) Plaintiff Chavez Huanga also alleges that he was not compensated at the appropriate overtime rate (1.5x his regular rate of pay) for the overtime hours he worked. (*Id.* ¶ 39.) In

---

[1] In the complaint, Plaintiffs allege that each Plaintiff was paid a "flat hourly rate." (*See* Compl., ECF No. 1, ¶¶ 30, 38, 49, 58.) However, Plaintiffs later represented that each Plaintiff was paid at a flat rate each week, without regard to the number of hours worked, as indicated in Plaintiffs' damages calculations, and confirmed by Plaintiffs' counsel at the December 17, 2024 fairness hearing. (*See* Damages Chart, ECF No. 20-9; Hearing Tr., ECF No. 49, at 7:6–11.)

addition, Plaintiff Chavez Huanga contends that Defendants paid him on a bi-weekly basis, in violation of timely pay and frequency of pay requirements under the NYLL. (*Id.* ¶ 40.) Finally, Plaintiff Chavez Huanga alleges that he was not compensated at all for his last 14 weeks of employment. (*Id.* ¶ 41.)

Plaintiff Luis Bermeo alleges that he worked as a taper, laborer, and helper from in or around June 2020 until in or around September 2022. (*Id.* ¶ 42.) Plaintiff Bermeo avers that from in or around June 2020 until in or around December 2021, he regularly worked five (5) days per week with shifts "beginning at approximately[] 7:00 a.m. each workday and regularly ending at approximately 3:30 p.m., or later, two (2) days per week and from 7:00 a.m. each workday and regularly ending at approximately 5:30 p.m., or later, three (3) days per week," and that he "worked an additional eight (8) hours every Saturday, twice per month." (*Id.* ¶¶ 44–45.) Plaintiff Bermeo therefore "was regularly required to work approximately forty-eight and a half (48.5) hours each week when Plaintiff worked five (5) days per week and approximately fifty-six and a half (56.5) hours each week when Plaintiff worked every Saturday," or, on average, fifty-two and a half (52.5) hours per week from in or around June 2020 until in or around December 2021. (*Id.* ¶¶ 46–47.) From in or around January 2022 to in or around September 2022, Plaintiff Bermeo worked from approximately "7:00 a.m. each workday and regularly ending at approximately 3:30 p.m., or later, five (5) days per week," or, on average, forty-two and a half (42.5) hours per week. (*Id.* ¶¶ 44, 48.) Plaintiff Bermeo claims he was paid a flat hourly rate, "without regard for the numbers of hours worked," of approximately $32.00 per hour from in or around June 2020 until in or around December 2021, and $27.00 per hour from in or around January 2022 until in or around September 2022. (*Id.* ¶ 49.) Plaintiff Bermeo alleges that he was not compensated at the appropriate overtime rate (1.5x his regular rate of pay) for the overtime hours he

4

worked. (*Id.* ¶ 50.) In addition, Plaintiff Bermeo contends that Defendants paid Plaintiff Bermeo on a bi-weekly basis, in violation of timely pay and frequency of pay requirements under the NYLL. (*Id.* ¶ 51.) Finally, Plaintiff Bermeo alleges that he was not compensated at all for his last 19 weeks of employment. (*Id.* ¶ 52.)

Finally, Plaintiff Adolfo Daquileman alleges that he worked as a carpenter from in or around July 2021 until in or around August 2022 and worked approximately sixty-six (66) to seventy-seven (77) hours each week, for an average of 71.5 hours per week. (*Id.* ¶¶ 53, 56.) Plaintiff Daquileman avers that he regularly worked shifts "beginning at approximately 7:00 a.m. each workday and regularly ending at approximately 6:00 p.m., or later, six (6) to seven (7) days per week." (*Id.* ¶ 55.) Plaintiff Daquileman claims he was paid a flat hourly rate, "without regard for the numbers of hours worked," of approximately $23.00 per hour from in or around July 2021 until in or around December 2021, and $25.00 per hour from in or around January 2022 until in or around August 2022. (*Id.* ¶ 58.) Plaintiff Daquileman alleges that he was not compensated at the appropriate overtime rate (1.5x his regular rate of pay) for the overtime hours he worked. (*Id.* ¶ 59.) In addition, Plaintiff Daquileman contends that Defendants paid him on a bi-weekly basis, in violation of timely pay and frequency of pay requirements under the NYLL. (*Id.* ¶ 60.) Finally, Plaintiff Daquileman alleges that he was not compensated at all for his last 12 weeks of employment. (*Id.* ¶ 61.)

In addition to each Plaintiff's individual claims, all four Plaintiffs allege that Defendants did not provide Plaintiffs with wage statements or any notice of their rate of pay, regular pay day, and other such information as required by the NYLL. (*Id.* ¶¶ 64–65.) Plaintiffs further allege that Defendants willfully failed to keep payroll records and post notices of minimum wage and overtime wage requirements in a conspicuous place

at their location of employment as required under the NYLL and the FLSA. (*Id.* ¶¶ 62–63.)

## II. Procedural History

As set forth above, Plaintiffs initiated this action on October 4, 2022. (*See* Compl., ECF No. 1.) The Clerk of Court issued summons. (*See* Summons Issued, ECF No. 8.) Plaintiffs filed proof of service as to Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc., on October 19, 2022, with an answer due November 4, 2022. (Aff. of Service, ECF No. 9.) On November 4, 2022, Plaintiffs filed proof of service as to all three Defendants, with an answer deadline of November 22, 2022. (Aff. of Service, ECF No. 10.)

On November 23, 2022, given that no Defendant had responded to the complaint, the Court directed Plaintiffs to file a status report by January 6, 2023. (Nov. 23, 2022 ECF Status Report Order.) On January 6, 2023, Plaintiffs submitted a status report indicating that Plaintiffs were in contact with a representative for Defendants, and that Defendants were seeking legal counsel and needed additional time to respond to the complaint. (Status Report, ECF No. 11.) In response, the Court ordered another status report. (Jan. 9, 2023 ECF Order.) On February 10, 2023, Plaintiffs filed a status report indicating that Defendants were still in the process of retaining legal counsel; the Court ordered another status report. (Letter, ECF No. 12; Feb. 13, 2023 ECF Order.) On March 23, 2023, Plaintiffs filed a status report indicating that Defendant Lally had expressed to them that there were financial difficulties on behalf of Defendants, but that, should Defendants fail to have counsel appear within the week, Plaintiffs intended to file requests for certificates of default against Defendants. (Letter, ECF No. 13.) In response, the Court directed Plaintiffs to file a status report by April 28, 2023, should they choose not to commence default motion proceedings. (Mar. 24, 2023 ECF Order.)

Plaintiffs failed to commence default proceedings or file a status report by the April 28, 2023 deadline. (*See* May 1, 2023 ECF Status Report Order.) On May 2, 2023, Plaintiffs submitted a request for a certificate of default against Defendants, as well as a status report indicating that they had not been able to get in contact with Defendants since their last status report. (Req. for Certificate of Default, ECF No. 14; Status Report, ECF No. 15.) The Clerk of Court entered default against Defendants on May 4, 2023, and the next day, Plaintiffs filed an affirmation of service indicating they had mailed copies of the Clerk's entry of default to Defendants. (Clerk's Entry of Default, ECF No. 16; Affirmation of Service, ECF No. 17.) On May 18, 2023, Judge Irizarry directed Plaintiffs to file their motion for default judgment by June 5, 2023. (May 18, 2023 ECF Order.)

On June 5, 2023, Plaintiffs moved for default judgment. (Mot. for Default J., ECF No. 19.) Judge Irizarry referred the motion to the undersigned Magistrate Judge and directed Plaintiffs to file proof of service of the default judgment motion papers. (June 6, 2023 ECF Order Referring Mot.) Plaintiffs filed an affirmation averring that Defendants were sent copies of the default motion that same day. (Affirmation of Service, ECF No. 22.)

On June 23, 2023, Defendant Lally filed a declaration in opposition to Plaintiffs' default motion. (Lally Decl., ECF No. 24.) In the declaration, Defendant Lally represented that Defendant Tribesmen Group Inc. had not been in operation for approximately five years, and that Tribesmen General Contracting, Inc., had run into severe financial difficulties the prior year, such that Defendant Lally could not fully pay his employees, including Plaintiffs. (*Id.* ¶ 2.) Defendant Lally also stated that in September 2022, after Plaintiffs informed him that they would sue for their unpaid wages, Lally offered each Plaintiff and one other employee $5,000, "with the rest of what they were owed to follow," in exchange for not commencing the lawsuit. (*Id.*)

Plaintiffs and the other employee agreed, and each accepted a $5,000 check. (*Id.*) Defendant Lally further represented that his financial difficulties have prevented him from retaining legal counsel. (*Id.* ¶ 5.) Defendant Lally attached to his declaration copies of the $5,000 checks he provided to Plaintiffs. (*Id.* at ECF pp. 4–5.)

On October 3, 2023, the Court held a hearing on Plaintiffs' motion for a default judgment. (Oct. 3, 2023 ECF Min. Entry & Order.) Defendants did not appear. (*Id.*) The Court expressed concerns regarding Plaintiffs' motion, including whether Plaintiffs had adequately pleaded their wage notice and statement claims. (*See id.*) The Court also requested additional evidence as to how Plaintiffs' rate of pay and damages calculations were derived, since Plaintiffs appeared to calculate damages based on a regular rate of pay derived from a 40-hour work week, even though the complaint alleged that Plaintiffs worked more than 40 hours per week and received payment "without regard for the number of hours worked," and in light of the applicable Department of Labor regulations and NYLL Rules. (*See id.*) *See also* 29 C.F.R. § 778.112. That same day, Defendant Lally filed a letter apologizing for Defendants' absence from the conference and requesting that the conference be rescheduled. (Letter, ECF No. 26.) In light of Defendant Lally's efforts to appear, the Court scheduled a status conference for November 14, 2023. (Oct. 13, 2023 ECF Scheduling Order.) Plaintiffs then moved for an extension of time to file any supplemental submissions in response to the concerns the Court raised in the October 3, 2023 hearing and corresponding minute entry and order, which the Court granted. (Mot. for Extension of Time, ECF No. 28; Nov. 6, 2023 ECF Order.)

On November 14, 2023, the Court held a telephonic status conference with Plaintiffs' counsel and Defendant Lally present. (Nov. 14, 2023 ECF Min. Entry & Order.) The parties represented that they had conferred regarding the possibility of

settlement, and the Court directed them to continue to discuss settlement. (*Id.*) The Court also advised Defendant Lally that, while he may appear *pro se,* corporate defendants may not, and therefore Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc. (the "Corporate Defendants") were at risk of a default judgment without legal representation. (*Id.*) The Court further concluded that Plaintiffs' default judgment motion should be held in abeyance due to Defendant Lally's appearance. (*Id.*)

The Court held another conference on December 7, 2023, at which the Court referred the parties to mediation. (Dec. 7, 2023 ECF Min. Entry & Order.) In light of the parties' referral to mediation, Judge Irizarry terminated without prejudice Plaintiffs' motion for a default judgment. (Dec. 8, 2023 Order Terminating Mot.) After that, the parties failed to comply with several Court-ordered deadlines regarding mediation. (*See* Jan. 8, 2024 ECF Order; Mar. 8, 2024 ECF Order; Mar. 27, 2024 ECF Order.) On June 18, 2024, Plaintiffs filed a letter representing that the parties had been unable to find a mutually agreeable date for mediation and suggesting that an in-person settlement conference may be more productive. (Letter, ECF No. 41.) The Court subsequently scheduled a status conference. (June 24, 2024 Scheduling Order.) At the status conference, the Court reset the parties' deadlines for mediation, and directed Defendant Lally to contact the E.D.N.Y. Pro Se Office to indicate his intent to appear *pro se*. (July 25, 2024 ECF Min. Entry & Order.) The parties then participated in mediation. (Sept. 10, 2024 ECF Report.)

On September 11, 2024, the Court received a report indicating that the parties' mediation was successful. (*See* Sept. 11, 2024 ECF Order.) On October 10, 2024, Plaintiffs confirmed that the parties had reached a settlement in principle. (*See* Pls.' Letter, ECF No. 44.) The Court ordered a status conference in the event that the parties did not file a

motion for settlement approval pursuant to *Cheeks* before October 28, 2024. (Oct. 15, 2024 ECF Order.) At the resulting October 28, 2024 conference, the parties discussed the status of the settlement agreement, and the Court directed Plaintiffs to file a proposed settlement agreement by November 12, 2024. (*See* Oct. 28, 2024 ECF Min. Entry & Order.) On November 12, 2024, Plaintiffs moved for an extension of time to file the proposed agreement, which the Court granted. (Letter Mot., ECF No. 45; Nov. 13, 2024 ECF Order Granting Mot.)

On November 19, 2024, Plaintiffs and Defendant Lally filed a joint letter motion requesting approval of the parties' settlement agreement.[2] (Mot. for Settl. Approval, ECF No. 46.) In the motion, the parties requested a one-week extension to submit a fully executed agreement that included Plaintiffs' signatures. (*Id.* at ECF p. 1 n.1.) That same day, Plaintiffs and Defendant Lally filed a form consenting to magistrate judge jurisdiction. (Consent to Jurisdiction, ECF No. 47.) On November 20, 2024, Judge Irizarry struck the parties' consent form, as the two Corporate Defendants did not sign the form through an attorney,[3] and referred the motion for settlement approval to the undersigned Magistrate Judge. (Nov. 20, 2024 ECF Order.) On November 20, 2024, the Court scheduled a *Cheeks* fairness hearing for December 10, 2024. (Nov. 20, 2024 Scheduling Order.) In the scheduling order, the Court expressed concerns about discrepancies between the total proposed settlement amount and the payment installment plan outlined in the settlement agreement. (*Id.*) The Court directed the

---

[2] Corporate Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc. are not parties to the settlement agreement. (*See* Second Settl. Agr., ECF No. 48-1.)

[3] Defendants have not had legal representation during the pendency of this litigation. Defendant Lally has been repeatedly reminded of the risks presented by Corporate Defendants' lack of representation in the case. (*See, e.g.*, Nov. 14, 2023 ECF Min. Entry & Order; Oct. 28, 2024 ECF Min. Entry & Order.)

parties to file a revised and fully executed settlement agreement and confession of judgment by December 4, 2024. (*Id.*) The parties submitted a letter and a revised executed settlement agreement and confession of judgment on December 4, 2024. (*See* Letter, ECF No. 48; Second Settl. Agr., ECF No. 48-1; Confession of J., ECF No. 48-2.)

On December 10, 2024, the Court held a fairness hearing on the parties' motion for settlement approval. (*See* Dec. 10, 2024 ECF Min. Entry & Order.) At the hearing, Plaintiffs represented that they would file a notice of voluntary dismissal without prejudice as to Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc., and pursue settlement only against Defendant Lally. (Hearing Tr., ECF No. 49, at 5:11–6:2.) The Court directed Plaintiffs to submit missing billing records, expense receipts, and Plaintiffs' retainer agreements. (*See id.* at 10:18–11:15, 12:11–13:9.) On December 20, 2024, Plaintiffs filed a letter submitting Plaintiffs' counsel's billing records, invoices, and retainer agreements. (Letter, ECF No. 50.) Plaintiffs also filed a notice of voluntary dismissal for Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc., including a signature block for the undersigned Magistrate Judge. (Notice of Voluntary Dismissal, ECF No. 51.) On December 26, 2024, the Court directed the parties to refile the notice to the attention of Judge Irizarry, and reminded the parties that they may not execute the terms of the settlement until the settlement has been ultimately approved by Judge Irizarry. (Dec. 26, 2024 ECF Order.)

On December 27, 2024, Plaintiffs filed a notice of voluntary dismissal for the Corporate Defendants, with a signature block for Judge Irizarry. (Notice of Voluntary Dismissal, ECF No. 53.) Judge Irizarry ordered Plaintiffs' counsel to file an affidavit or declaration attesting that no settlement agreement had been reached with the non-appearing Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc., in contravention of *Cheeks*. (Jan. 6, 2025 ECF Order.) Plaintiffs subsequently filed an

affirmation in compliance with Judge Irizarry's order and an affidavit of service indicating that Judge Irizarry's January 6, 2025 order was provided to Defendants. (Aff. of Service, ECF No. 54; Att'y Affirmation, ECF No. 56.)

On January 8, 2025, the Court directed Plaintiffs to file a supplemental declaration (1) clarifying the identity of the signatory to the retainer agreement for Plaintiff Adolfo Daquileman, as his agreement was attributed to Adolfo Charicando, and (2) requesting damages estimates for each Plaintiff, as the damages calculations filed in support of Plaintiffs' motion for default judgment, which Plaintiffs represented were the basis for the damages estimates proffered in the motion for settlement approval, did not provide damages breakdowns for every Plaintiff and included two different damages calculations for one Plaintiff. (Jan. 8, 2025 ECF Order.) Plaintiffs filed an affirmation responding to the Court's concerns, along with an affidavit from Plaintiff Daquileman confirming that he signed the retainer agreement, corrected damages calculations, and affidavits from each Plaintiff that were prepared in support of Plaintiffs' default judgment motion.[4] (Att'y Affirmation, ECF No. 55; Aff. of Adolfo Daquileman, ECF No. 55-1; Corrected Damages Chart, ECF No. 55-2; Pls.' Affs., ECF No. 55-3.)

On January 16, 2025, Judge Irizarry dismissed Defendants Tribesmen General Contracting, Inc., and Tribesmen Group Inc. without prejudice. (Jan. 16, 2025 ECF Order of Dismissal.)

*    *    *    *    *

---

[4] While the affidavits were prepared in further support of Plaintiffs' motion for a default judgment, the affidavits were never filed, as Defendant Lally appeared in the case and the motion for default judgment was terminated. (Att'y Affirmation, ECF No. 55, ¶ 11; Dec. 8, 2023 ECF Order.)

Under the terms of the settlement agreement, Defendant Lally agrees to pay a total of $70,000, of which Plaintiffs are to receive $45,742.67 and Plaintiffs' counsel is to receive $24,257.33 in attorneys' fees and costs. (Mot. for Settl. Approval, ECF No. 46, at ECF pp. 5–6.) For the reasons set forth below, the Court respectfully recommends approving the settlement agreement.

## DISCUSSION

### I. Legal Standards

In reviewing proposed settlements under the FLSA, courts are tasked with considering "'whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Ahad v. 21st St. Hosp., LLC*, No. 21-CV-2079 (LDH) (TAM), 2022 WL 2467243, at *2 (E.D.N.Y. Mar. 17, 2022) (quoting *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *2 (E.D.N.Y. Apr. 8, 2021)), *report and recommendation adopted*, June 27, 2022 ECF Order Adopting R. & R.; *see also Cheeks*, 796 F.3d at 206. Courts in this circuit have identified several factors for determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations omitted); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

The Second Circuit has held that if a court finds that a "proposed settlement is unreasonable in whole or in part, the court . . . must reject the agreement or give the parties an opportunity to revise it." *Fisher*, 948 F.3d at 605. The court cannot, however,

"simply rewrite the [settlement] agreement." *Id.* Accordingly, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606 (*citing Evans v. Jeff D.*, 475 U.S. 717, 727 (1986)).

## II. Settlement Agreement

Analyzing the settlement agreement against the *Wolinsky* factors, the Court finds that the amount and terms of the settlement are fair and reasonable. Considering (1) the settlement amount as compared to Plaintiffs' possible range of recovery; (2) the terms of the agreement; and (3) the possible litigation risks, which could severely limit the range of Plaintiffs' possible recovery, the Court concludes, on balance, that the settlement agreement reflects "a fair and reasonable compromise." *Romero v. Sid Boys Corp.*, No. 18-CV-6583 (CLP), 2024 WL 4871367, at *3 (E.D.N.Y. Nov. 22, 2024).

### A. FLSA Settlement Amount & the *Wolinsky* Factors

#### 1. *Plaintiffs' Range of Possible Recovery*

The Court is satisfied that the proposed settlement amount will adequately compensate Plaintiffs as to their wage deficiency claim under the totality of the circumstances of this case. The agreement proposes a total settlement of $70,000, with $45,742.67 going to Plaintiffs. (Second Settl. Agr., ECF No. 48-1, ¶ 1; Mot. for Settl. Approval, ECF No. 46, at ECF p. 5.)

##### a. Plaintiffs' Estimate of the Wage Deficiency

Beginning with Plaintiffs' range of possible recovery, Plaintiffs' counsel represented that, based on Plaintiffs' initial estimated damages, Plaintiffs "were owed approximately $371,618.04 in unpaid overtime wages, approximately $62,200 in unpaid wages, for a total of approximately $433,818.04 in unpaid wages, not including any

other monetary relief that they may have been entitled to under the FLSA or NYLL."[5] (Mot. for Settl. Approval, ECF No. 46, at ECF p. 4.)

The parties' settlement agreement sets forth what settlement amount each individual Plaintiff will receive. Plaintiffs have also provided updated damages calculations for each individual Plaintiff. (Corrected Damages Chart, ECF No. 55-2.) *See Campos v. Up Thai Corp.*, No. 19-CV-4730 (VF), 2024 WL 2846873, at *1 (S.D.N.Y. May 30, 2024) (observing that where a settlement agreement applies to multiple plaintiffs, "the parties are required to provide an estimation of each plaintiff's calculated damages and the amount each plaintiff will ultimately receive under the agreement").

However, as noted above, the Court identified concerns about Plaintiffs' damages calculations long ago. (*See* Oct. 3, 2023 ECF Min. Entry & Order.) At the December 10, 2024 fairness hearing, Plaintiffs' counsel confirmed that Plaintiffs'

---

[5] This damages estimate does not include statutory damages for wage notice and statement violations brought under the Wage Theft Prevention Act ("WTPA"), or damages for violations of the timely pay and frequency of pay requirements of the NYLL, although Plaintiffs included both in their complaint and damages calculations. (*See* Compl., ECF No. 1, ¶¶ 97–100 (violation of pay frequency claim), ¶¶ 101–106 (WTPA wage notice and statement claims); Corrected Damages Chart, ECF No. 55-2.) As to the wage notice and statement claims under the WTPA, the Court is skeptical that Plaintiffs have adequately established Article III standing for these claims; they are thus at risk of dismissal for lack of standing. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 302, 304 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims and reiterating that supplemental jurisdiction does not excuse a plaintiff from needing to demonstrate standing for a state law statutory damages claim). As to Plaintiffs' pay frequency claims, brought under NYLL § 198(1-a), the law is developing on the question of whether employees have a private right of action under this provision of the NYLL for violations of the requirement that manual laborers be paid weekly, as set forth in NYLL § 191(1)(a)(i). *See Espinal v. Sephora USA, Inc.*, No. 22-CV-3034 (PAE) (GWG), 2024 WL 4241537 (S.D.N.Y. Sept. 19, 2024) (finding that there is a private right of action for pay frequency claims and discussing the split in authority in the state appellate courts, with the First Department finding a right of action based on late-paid wages, and the Second Department finding no such right in a 2024 opinion). The penalty for late payments is liquidated damages in the "full amount of any such underpayment, and an additional amount as liquidated damages," which can range from 100% of the underpaid wages to 300% for a willful violation. *See* NYLL § 198(1-a). Here, even taking into account additional possible damages for the pay frequency violations and WTPA claims, the Court recommends finding that the settlement amount is reasonable under the totality of the circumstances, including a risk of a prolonged litigation regarding the viability of these claims due to current legal uncertainty.

damages estimates were calculated by first taking the weekly rate each Plaintiff was paid and dividing by 40 to determine the hourly rate, and then multiplying the hourly rate by 1.5 to determine each Plaintiff's overtime rate.[6] (Hearing Tr., ECF No. 49, at 7:6–11; *see also* Corrected Damages Chart, ECF No. 55-2.)

Plaintiffs' calculation method for the regular rate of pay is not supported by the Department of Labor or NYLL guidelines for calculating damages where workers are paid a weekly rate "without regard to the number of hours worked." 29 C.F.R. § 778.112. The Department of Labor regulations provide, in pertinent part, as follows:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

*Id.* In turn, the NYLL instructs that the overtime pay for "miscellaneous industries" should be calculated "in the manner and methods provided in" the FLSA. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see also* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16 ("The term *regular rate* shall mean the amount that the employee is regularly paid for each hour of work. When an employee is paid on a piece work basis, salary, or any

---

[6] Plaintiffs have also provided affidavits together with the updated damages charts; these affidavits state that Plaintiffs were told what their hourly rate would be, but were then paid a fixed amount that compensated them "only for the first 40 hours of work during each week"; Plaintiffs also generally assert they were not provided with paystubs or documentation breaking down their pay. (*See* Daquileman Aff., ECF No. 55-3, at ECF p. 2, ¶¶ 12, 8; Bermeo Aff., ECF No. 55-3, at ECF pp. 6–7, ¶¶ 14, 10; Chavez Huanga Aff., ECF No. 55-3, at ECF p. 9, ¶¶ 12, 8; Charicando Aff., ECF No. 55-3, at ECF p. 12, ¶¶ 13, 8.) In the absence of pay stubs or documentation and in light of the lengthy course of employment, the Court must look to the totality of the circumstances to understand the parties' agreement, as discussed below, and, when an employee is paid a flat weekly rate, is constrained to calculate the regular rate of pay on the basis of the total number of hours worked. *See* 29 C.F.R. § 778.112.

basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings.").

According to these regulations, "[w]hen an employee receives a fixed weekly salary, the first step in calculating the rate at which that employee should receive overtime pay is to determine the 'regular rate of pay,' that is, the employee's fixed salary divided by the number of hours worked in a particular week." *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *22 (E.D.N.Y. Sept. 19, 2016). The overtime rate of pay is then calculated by multiplying the regular rate of pay by 1.5. *See Du v. CGS Metal Fabrication, Inc.*, No. 19-CV-1821 (ARR) (TAM), 2022 WL 987316, at *8 (E.D.N.Y. Jan. 14, 2022) (calculating rate of pay for non-hospitality plaintiff), *report and recommendation adopted*, Jan. 31, 2022 ECF Order Adopting R. & R. It has been observed that "[t]his method of calculation has strange consequences; it gives those workers who work longer hours a lower regular rate. Courts nevertheless are constrained to follow the FLSA regulations." *Chun Jie Yin v. Kim*, No. 07-CV-1236 (DLI) (JO), 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citations omitted) (discussing proper methodology for calculating the regular rate of pay under the Department of Labor regulations). In addition, "[i]n the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Moon v. Kwon*, 248 F. Supp. 2d 201, 206 (S.D.N.Y. 2002).

Here, Plaintiffs represent that they were told an hourly rate at the time of hire, yet also allege that they continuously worked overtime every week for an extended period from the outset of their employment and that their weekly rate of pay did not change based on the number of hours worked. Under these circumstances, the

17

allegations demonstrate that Plaintiffs and Defendants had agreed, "at least implicitly," that Plaintiffs "would work more than 40 hours per week for their weekly salary." *Ayala*, 2016 WL 5092588, at *23; *see also, e.g.*, *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (observing that when the plaintiff's testimony established that when he was first hired, he was told he would work 54 hours per week, and then in fact worked 54 hours each week for the same weekly salary throughout his employment, the court must conclude that "the plaintiff and the defendants had an understanding that the plaintiff's weekly salary was intended to compensate him for 54 hours [of work] per week"). Under the applicable regulations, and given the facts alleged, the Court finds that, in considering the possible range of recovery here, it must be seriously considered that Plaintiffs' actual wage deficiencies should be calculated based on a regular rate of pay calculated by dividing their weekly salary by the hours actually worked, not 40.

Accordingly, there are serious questions as to the accuracy of Plaintiffs' damages estimate and the possible range of recovery in this case. Plaintiffs' method of dividing their weekly rate of pay by 40 hours, instead of by the number of hours worked in a particular week, suggests that Plaintiffs' damages estimates are based on significantly higher regular rates of pay and overtime rates than may be supportable under the applicable regulations. Consequently, the Court finds that Plaintiffs' overall damages estimate appears to be significantly overestimated. (*See* Hearing Tr., ECF No. 49, at 7:12–9:18.)

Defendant Lally has also raised factual and legal disputes in response to Plaintiffs' damages claims. (*See* Mot. for Settl. Approval, ECF No. 46, at ECF p. 4; Lally Decl., ECF No. 24.) He further represented that he already paid Plaintiffs $5,000 each to compensate for a portion of their missing pay before the lawsuit was filed, which

Plaintiffs have not disputed. (*See* Lally Decl., ECF No. 24.) The $5,000 payments are not

taken into consideration in Plaintiffs' damages estimate.

      b.  <u>The Court's Estimate of Plaintiffs' Wage Deficiency</u>

      Based on the methodology set forth by the Department of Labor and Plaintiffs'

factual allegations regarding their dates of employment and rates of pay, the Court has

independently calculated a damages estimate as to Plaintiffs' overtime wage deficiency,

as detailed in the chart below:

| Start Date | End Date | # of Weeks | Regular Rate of Pay (total weekly pay/total hours per week)[7] | NYC Min. Wage[8] | OT Wage | Difference Between OT Wage & Regular Rate of Pay | OT Hours (weeks x OT hours per week) | OT Wage Total (OT Diff. x OT hours) |
|---|---|---|---|---|---|---|---|---|
| **Segundo Charicando** *(alleges three rates of pay over the different time periods indicated below, for 66 hours per week with 26 hours of overtime)* | | | | | | | | |
| 12/1/2018 | 12/31/2020 | 108.86 | ($23x40)/66= $13.94 | $15.00 | $22.50 | $8.56 | 2,830.36 | $24,227.88 |

---

[7] The regular rate of pay is calculated by dividing each Plaintiff's weekly rate of pay by the number of hours that Plaintiff states they worked during that period of time. For example, Charicando alleges that he was paid $23 x 40 ($920 per week) from December 2018 until December 2020, and then at a rate of $25 x 40 per week ($1,000 per week) from January 2021 to December 2021, and then $28 x 40 ($1,120 per week) from January 2022 until September 2022. (*See* Compl., ECF No. 1, ¶ 30.) The applicable overtime rate is calculated as the higher of 1.5x each Plaintiff's regular rate of pay or 1.5x the applicable minimum wage in New York City at that point in time. 29 C.F.R. § 778.107. With regard to the damages chart, the Court notes that each Plaintiff's overtime wage deficiency is estimated based upon the number of hours they allege to have worked (which vary and are indicated parenthetically under each Plaintiff's name). Finally, the Court is cognizant that, for Plaintiffs Charicando and Daquileman, dividing their weekly pay by the alleged number of hours worked suggests that their hourly rate of pay may have been less than the applicable minimum wage at certain times, but this is quite unclear with respect to Charicando as discussed *infra* note 8. However, no Plaintiff alleged a minimum wage claim in the complaint. (*See* Compl., ECF No. 1.)

[8] The Court uses $15.00 per hour, the rate for employers of 11 or more employees, as the minimum wage for these calculations, but notes that using $15.00 may actually overstate the wages that were due to Plaintiff Charicando from December 2018 to December 30, 2019. The applicable minimum wage for a small employer in New York City (with 10 or less employees) from December 31, 2017, to December 30, 2018, was $12.00, and from December 31, 2018, to December 30, 2019, the rate was $13.50. *See* New York Department of Labor, History of Minimum Wage, *available at* https://dol.ny.gov/history-minimum-wage-new-york-state. The complaint is silent on the number of workers employed by Defendants. (*See* Compl., ECF No. 1.) Calculating Charicando's overtime deficiency for the time period from December 1, 2018, through December 30, 2020, based on those lower rates, results in an overtime wage deficiency of $21,895.06 for that period, not $24,227.88.

| Start Date | End Date | # of Weeks | Regular Rate of Pay (total weekly pay/total hours per week)[7] | NYC Min. Wage[8] | OT Wage | Difference Between OT Wage & Regular Rate of Pay | OT Hours (weeks x OT hours per week) | OT Wage Total (OT Diff. x OT hours) |
|---|---|---|---|---|---|---|---|---|
| 1/1/2021 | 12/31/2021 | 52.14 | ($25x40)/66= $15.15 | $15.00 | $22.73 | $7.58 | 1,355.64 | $10,275.75 |
| 1/1/2022 | 7/1/2022 | 26 | ($28x40)/66= $16.97 | $15.00 | $25.46 | $8.49 | 676 | $5,739.24 |
| 7/2/2022 | 9/30/2022 | 13 | $0.00[9] | $15.00 | $25.46 | $25.46 | 338 | $8,605.48 |
| **Subtotal** | | | | | | | | **$48,848.35** |
| **Luis Mario Chavez Huanga** *(alleges two rates of pay over the time periods indicated below, for 46.5 hours per week with 6.5 hours of overtime)* | | | | | | | | |
| 3/1/2018 | 12/31/2020 | 148.14 | ($23x40)/46.5= $19.78 | $15.00 | $29.67 | $9.89 | 962.91 | $9,523.18 |
| 1/1/2021 | 6/24/2022 | 77.14 | ($27x40/46.5)= $23.23 | $15.00 | $34.85 | $11.62 | 501.41 | $5,826.38 |
| 6/25/2022 | 9/30/2022 | 14 | $0.00 | $15.00 | $34.85 | $34.85 | 91 | $3,171.35 |
| **Subtotal** | | | | | | | | **$18,520.91** |
| **Luis Bermeo** *(alleges two rates of pay over the time periods indicated below, with an average of 52.5 hours per week from June 2020 until December 2021 with 12.5 hours of overtime, and 42.5 hours per week from January 2022 until September 2022 with 2.5 hours of overtime)* | | | | | | | | |
| 6/1/2020 | 12/31/2021 | 82.71 | ($32x40)/52.5= $24.38 | $15.00 | $36.57 | $12.19 | 1,033.88 | $12,603.00 |
| 1/1/2022 | 5/20/2022 | 20 | ($27x40)/42.5= $25.41 | $15.00 | $38.12 | $12.71 | 50 | $635.50 |
| 5/21/2022 | 9/30/2022 | 19 | $0.00 | $15.00 | $38.12 | $38.12 | 47.50 | $1,810.70 |
| **Subtotal** | | | | | | | | **$15,049.20** |
| **Adolfo Daquileman** *(alleges two rates of pay over the time periods indicated below, with an average of 71.5 hours per week from July 2021 until August 2022 with 31.5 hours of overtime))* | | | | | | | | |
| 7/1/2021 | 12/31/2021 | 26.29 | ($23x40)/71.5= $12.87 | $15.00 | $22.50 | $9.63 | 828.14 | $7,974.99 |
| 1/1/2022 | 6/8/2022 | 22.71 | ($25x40)/71.5= $13.99 | $15.00 | $22.50 | $8.51 | 715.37 | $6,087.80 |
| 6/9/2022 | 8/31/2022 | 12 | $0.00 | $15.00 | $22.50 | $22.50 | 378 | $8,505.00 |
| **Subtotal** | | | | | | | | **$22,567.79** |
| **Total Overtime Deficiency** | | | | | | | | **$104,986.25** |

In addition to the overtime deficiency, Plaintiffs allege that they were not paid at all for the last 12 to 19 weeks of their employment, as discussed above. The Court has

---

[9] During the weeks when Plaintiffs allege that they received no pay, the Court used the last regular rate of pay as the rate of pay in the calculation of overtime damages. The overtime amount listed here includes only the overtime hours; the unpaid wages for the first 40 hours of work is discussed below.

independently calculated a damages estimate as to Plaintiffs' unpaid wage deficiency for the first 40 hours worked over these weeks, as detailed in the chart below:

| Plaintiff | Regular Rate of Pay[10] | Weeks Without Pay | Total Unpaid Regular Wages (Regular Rate x 40 x Weeks Without Pay) |
|---|---|---|---|
| Segundo Charicando | 16.97 | 13 | $8,824.40 |
| Luis Mario Chavez Huanga | 23.23 | 14 | $13,008.80 |
| Luis Bermeo | 25.41 | 19 | $19,311.60 |
| Adolfo Daquileman | 13.99 | 12 | $6,715.20 |
| Total Regular Hours Deficiency | | | $47,860.00 |

   c.   Analysis

   As set forth above, the Court estimates a wage deficiency total of approximately $152,846.25, comprising $104,986.25 in unpaid overtime wages and $47,860.00 in unpaid wages. With liquidated damages added in an equal amount, the total damages estimate is $305,692.50. Comparing the Court's damages estimate with the proposed settlement amount, the range of recovery here is approximately 46% of Plaintiffs' wage deficiency amount, and 23% of the total damages amount when liquidated damages are considered as to the wage deficiency.[11] A recovery amount between 23% of total

---

[10] The Court uses the final regular rate of pay for each Plaintiff, as set forth in the overtime wage deficiency chart above. *See also supra* note 7. The regular rate of pay is multiplied by 40 since the overtime deficiency chart already includes the unpaid overtime hours.

[11] This estimate does not consider each Plaintiff's recovery of $5,000 towards their wage deficiency due to the pre-lawsuit payment Defendant Lally made to each Plaintiff. Reducing the total wage deficiency by $20,000 lowers it to $132,846.25, which further lends support for the conclusion that the proposed settlement amount is reasonable overall for the purpose of providing Plaintiffs with a certain recovery, even if pre-lawsuit payments do not necessarily defeat a claim under the NYLL. *See Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (App. Div. 1st Dep't 2019). *But see Grant v. Global Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 122 (App. Div. 2d Dep't 2024) (disagreeing with the reasoning in *Vega* and finding that there is no private right of action where a worker is paid full wages after an initial wage deficiency); *see generally Espinal*, 2024 WL 4241537 (discussing split in New York appellate authority as to whether there is a private right of action for late-paid wages under the NYLL).

damages and up to 46% of actual compensatory damages is "fair and reasonable and in line with other cases approving FLSA settlements in this Circuit." *Soto v. Triumph Constr. Corp.*, No. 21-CV-2449 (VSB), 2023 WL 3483753, at *3 (S.D.N.Y. Apr. 26, 2023) (approving a settlement amount comprising around 15% of a plaintiff's total possible recovery in a case where liquidated damages did not apply); *see also Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 322–23 (S.D.N.Y. 2021) (approving a settlement of under 13% of the plaintiffs' possible recovery at trial; collecting cases).

The Court is of course cognizant that even when utilizing the Court's independent damages estimate, rather than Plaintiffs' damages estimate, there is a substantial difference between Plaintiffs' total claim for unpaid wages and the proposed settlement amount. However, given the numerous potential obstacles to Plaintiffs' recovery, including the serious questions as to the accuracy of and legal support for Plaintiffs' damages calculations, the low likelihood of recovery from the non-operating Corporate Defendants, and the financial situation of Defendant Lally, *see infra* Section II.A.2, the Court recommends finding the total settlement amount reasonable in the context of this case.

Finally, the Court notes that Plaintiffs have agreed to split the settlement proceeds evenly.[12] Given the difficulties inherent in continuing to litigate, the low

---

[12] The settlement agreement awards Plaintiffs identical portions of the settlement amount, even though each Plaintiff alleges that he worked different amounts of overtime, for different periods of time, and that he was not provided any compensation for different periods of employment. For example, Plaintiff Charicando alleges that he worked an average of sixty-six (66) hours per week from in or around December 2018 to in or around September 2022 and was not compensated at all for his last 13 weeks of employment. (Compl., ECF No. 1, ¶¶ 29, 33.) In comparison, Plaintiff Daquileman began working for Defendants three years later, beginning in or around July 2021 until in or around August 2022; he claims that he worked sixty-six (66) to seventy-seven (77) hours per week and did not receive any compensation for his final 12 weeks of employment. (Compl., ECF No. 1, ¶¶ 56, 61.) During the December 10, 2024 fairness hearing, Plaintiffs' counsel represented that Plaintiffs had agreed to split the settlement proceeds evenly. (Hearing Tr., ECF No. 49, at 10:4–13.)

likelihood of recovery from the Corporate Defendants or a substantially larger sum from Lally even if Plaintiffs prevailed at trial, and questions about the accuracy of Plaintiffs' proposed damages calculations, the Court respectfully recommends finding each Plaintiff's individual settlement amount reasonable given Plaintiffs' agreement to split the settlement proceeds evenly.

2. *Avoiding Anticipated Burdens and Expenses & Litigation Risks*

The proposed settlement will avoid additional expenses and costs, as well as litigation risks that Plaintiffs would face if the case were to continue. *See Santiago v. Agadjani*, No. 21-CV-7090 (KAM) (CLP), 2024 WL 4480106, at *4 (E.D.N.Y. Oct. 11, 2024) (approving settlement agreement where the "proposed settlement would allow the parties to end this litigation" and "avoid extensive litigation costs, including discovery costs and the corresponding costs of briefing dispositive motions"); *Escobar v. Variedades Belen Corp.*, No. 23-CV-04849 (JMW), 2024 WL 1259367, at *4 (E.D.N.Y. Mar. 25, 2024) (approving settlement amount where the settlement provides "an effective vehicle to avoid the significant risks and costs in further litigating this matter for all parties"). It also ensures that all Plaintiffs receive a certain recovery.

The parties disagree about the amount of unpaid wages owed to Plaintiffs, and the Court has substantial concerns about the accuracy of Plaintiffs' damages calculations, as discussed *supra*. Further litigation of these claims would likely require discovery, as well as the corresponding costs of dispositive motion practice or trial, at which it is not at all clear that Plaintiffs would recover the full damages amount they assert. (*See* Mot. for Settl. Approval, ECF No. 46, at ECF p. 4.) In addition, Plaintiffs have acknowledged that "Defendant Lally's financial hardship, supported by documentation at the time of mediation," would make it difficult for them to recover if litigation were to proceed. (*See id.*) As Plaintiffs have acknowledged, "[s]ettlement at

23

this juncture avoids the inherent risks and costs of litigation and allow[s] Plaintiffs to recover a substantial amount of their unpaid wages claim." (*Id.*) Given that (1) there are several factual and legal disputes that, depending on how they are resolved, could impact Plaintiffs' ability to recover, (2) Defendant Lally's financial situation limits any potential damages Plaintiffs could actually collect, and (3) the negotiated resolution of the matter provides certainty for all parties, this factor further supports the conclusion that the settlement amount should be found reasonable. *See also Castillo v. Cranes Express Inc.*, No. 18-CV-1271 (PKC) (LB), 2018 WL 7681356, at *2 (E.D.N.Y. Dec. 12, 2018) (approving settlement amount where "[t]he settlement provides plaintiff with certainty regarding what he will recover from defendants"); *Santiago*, 2024 WL 4480106, at *4.

    3.  *Arm's-Length Bargaining & Possibility of Fraud or Collusion*

    The record amply demonstrates that the settlement agreement was the product of arm's-length bargaining reached through mediation before an experienced mediator with all parties present. (Mot. for Settl. Approval, ECF No. 46, at ECF p. 5.) Plaintiffs stated that the parties engaged in "genuine, bona fide disputes over the hours worked by Plaintiffs and pay received by Plaintiffs, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount." (*Id.*) There is no evidence to suggest that the settlement was the product of fraud or collusion.

    For all these reasons, the Court respectfully recommends that the settlement amount be found to be fair and reasonable. *See Wolinsky*, 900 F. Supp. 2d at 335.

**B.  Settlement Agreement Terms**

    The terms of the settlement agreement further demonstrate that the proposed settlement is the product of arm's-length bargaining between the parties. (*See* Second Settl. Agr., ECF No. 48-1; Mot. for Settl. Approval, ECF No. 46, at ECF pp. 5–6.) The settlement agreement does not include the types of problematic provisions that could

run afoul of the FLSA's remedial purposes, such as impermissible confidentiality clauses, overly broad provisions, or non-disparagement clauses, nor does the settlement agreement include any clauses that limit the prospect of Plaintiffs' future employment by Defendant Lally. *See Romero*, 2024 WL 4871367, at *4 (finding that a release clause "limited to wage and hour and other employment claims arising from plaintiffs' relationship with defendants" does not offend *Cheeks*); *Villegas v. Jorge's Rest. Corp.*, No. 23-CV-01492 (HG), 2024 WL 2033495, at *2 (E.D.N.Y. Apr. 24, 2024) (approving settlement that contains "no confidentiality provisions, non-disparagement clauses, or provisions limiting Plaintiffs' ability to work in the future"). Accordingly, the Court finds the terms of the settlement to be fair and reasonable.

## III. Attorneys' Fees and Costs

When attorneys' fees are included as part of a settlement agreement, courts are required to "evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600 (citing *Cheeks*, 796 F.3d at 206; 29 U.S.C. § 216(b)); *see also Wolinsky*, 900 F. Supp. 2d at 336 ("[T]he Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." (alterations in original) (quotation marks omitted)).

Courts in the Second Circuit generally "calculate a reasonable fee using either the 'lodestar' method or the 'percentage of the fund' method." *Valencia v. Nassau Country Club*, No. 18-CV-2724 (LDH) (JO), 2020 WL 7249440, at *1 (E.D.N.Y. Oct. 19, 2020) (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)), *report and recommendation adopted*, 2020 WL 6867911 (E.D.N.Y. Nov. 23, 2020). "Either way, the court must consider the 'traditional criteria' for fee applications," including: "the time and labor expended by counsel; the magnitude and complexities of the litigation; the

risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations." *Id.* (citing, *inter alia*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). In addition, "in an individual FLSA action in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." *Perez-Ramos v. St. George Holding Corp.*, No. 18-CV-1929 (KAM) (JO), 2020 WL 415818, at *3 (E.D.N.Y. Jan. 27, 2020) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Under the "percentage of the fund" method, many courts find that "a one-third contingency fee is generally considered reasonable in this Circuit." *Castillo*, 2018 WL 7681356, at *4; *see also Escobar*, 2024 WL 1259367, at *5 (collecting FLSA cases approving attorney's fees equal to one-third of the settlement). "Critically, '[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs,'" even where attorneys' fees are calculated pursuant to the percentage of the fund method. *See Santiago*, 2024 WL 4480106, at *5 (quoting *Fisher*, 948 F.3d at 600). Courts use the "lodestar method" to "cross-check" the reasonableness of the attorneys' fees and "compare the fees generated by the percentage method with those generated by the lodestar method." *Escobar*, 2024 WL 1259367, at *5 (quotation marks and citations omitted).

Here, Plaintiffs' counsel requests $24,257.33 in fees and costs. (Mot. for Settl. Approval, ECF No. 46, at ECF p. 6.) As detailed in Plaintiffs' motion for settlement approval and supported by the billing records and receipts Plaintiffs' counsel submitted, counsel is requesting reimbursement for costs in the amount of $1,386.00, and $22,871.33 in fees. (Mot. for Settl. Approval, ECF No. 46, at ECF p. 6; Ex. Billing Records, ECF No. 50-1; Ex. Invoices, ECF No. 50-2.) The fee request is equal to one-third of the net settlement amount, after deducting $1,386.00 in costs ($68,614.00 / 3 =

$22,871.33), which is a percentage routinely found to be a reasonable attorneys' fee in FLSA cases in the Second Circuit. (*See* Mot. for Settl. Approval, ECF No. 46, at ECF p. 6.) *See also, e.g.*, *Caceres v. Brentwood Farmers Market, Inc.*, No. 20-CV-3476 (AKT), 2021 WL 3276637, at *2 (E.D.N.Y. May 4, 2021) (collecting cases).

Counsel indicates that their lodestar in this case, supported by contemporaneous billing records, amounts to more than $18,000 in fees alone as of December 10, 2024. (*See* Ex. Billing Records, ECF No. 50-1.) Contemporaneous billing records support this figure, showing 59.8 hours expended by attorneys referred to by the initials RA (Roman Avshalumov), JO (James O'Donnell), AS (Avraham Sher), and KS (Katelyn Schillaci), as well as 24.1 hours expended by paralegals, for a total of almost 84 hours, and at hourly rates of $425/hr., $350/hr., $175/hr., $175/hr., and $75/hr., respectively.[13] After reviewing the billing records submitted by Plaintiffs' counsel, the Court finds that the requested fee amount of $22,871.33 is approximately 1.2 times counsel's lodestar amount of $18,937.50, which represents the total amount of fees, exclusive of costs, incurred by counsel in this case. (*See* Mot. for Settl. Approval, ECF No. 46, at ECF p. 6; Ex. Billing Records, ECF No. 50-1.) The lodestar amount also does not take into consideration any work performed by Plaintiffs' counsel after December 10, 2024, the date the billing records close. (Ex. Billing Records, ECF No. 50-1.) "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *Meo v. Lane Bryant, Inc.*, No. 18-CV-6360 (AKT),

---

[13] Plaintiffs' counsel's invoice shows the following hourly breakdown: 25.4 hours billed by RA (Roman Avshalumov), 22.4 hours billed by KS (Katelyn Schillaci), 10.2 hours billed by AS (Avraham Sher), 1.8 hours billed by JO (James O'Donnell), and 24.1 hours billed by paralegals. (*See* Ex. Billing Records, ECF No. 50-1.)

2020 WL 4047897, at *2 (E.D.N.Y. July 17, 2020) (quotation marks omitted). Additionally, the lodestar multiplier of 1.2 is well "within the range of multiplier[s] that courts in this District have allowed." *Id.* at *3 (approving a lodestar multiplier of 1.53).

In light of the reasonableness demonstrated by the lodestar cross-check, and because Plaintiffs' counsel is requesting one-third of the net settlement amount, a percentage normally found acceptable in this circuit, upon review of the parties' submissions and in consideration of the *Goldberger* factors, the Court recommends finding that the requested fee is reasonable. *See Ahad*, 2022 WL 2467243, at *5. In addition, the Court has reviewed the costs and receipts submitted in support and finds that $1,386.00 in costs, which includes the $402 filing fee, $300 mediation fee, and $684 in service fees, is likewise reasonable.[14] (*See* Mot. for Settl. Approval, ECF No. 46, at ECF p. 6; Ex. Invoices, ECF No. 50-2.)

## CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for settlement approval be granted in its entirety.

\*    \*    \*    \*    \*

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that

---

[14] The Court takes judicial notice of the filing fee.

"failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

    **SO ORDERED.**

Dated: Brooklyn, New York
     February 12, 2025

                    *Taryn A. Merkl*
                    TARYN A. MERKL
                    UNITED STATES MAGISTRATE JUDGE